■ In the Matter of the Arbitration between JOHNSON CITY PROFESSIONAL FIREFIGHTERS LOCAL 921 et al., Respondents, and VILLAGE OF JOHNSON CITY, Appellant. (Proceeding No. 1.) In the Matter of the Arbitration between VILLAGE OF JOHNSON CITY, Appellant, and JOHNSON CITY FIREFIGHTERS ASSOCIATION, LOCAL 921 IAFF, Respondent. (Proceeding No. 2.) [898 NYS2d 706]—

Garry, J. Appeals (1) from an order of the Supreme Court (Lebous, J.), entered June 19, 2009 in Broome County, which, in proceeding No. 1, among other things, granted petitioner's application pursuant to CPLR 7502 for a preliminary injunction, and (2) from an order of said court, entered August 18, 2009 in Broome County, which, in proceeding No. 2, among other things, denied petitioner's application pursuant to CPLR 7503 to stay arbitration between the parties.

The Johnson City Professional Firefighters Association, Local 921 IAFF (hereinafter the Union), a union representing firefighting personnel, and the Village of Johnson City are parties to a collective bargaining agreement (hereinafter CBA). The CBA provides that "[t]he Village shall not lay-off any member of the bargaining unit during the term of this contract" (hereinafter the no-layoff clause). The CBA also includes a grievance procedure by which disputes "involving the interpretation or application of any provisions of [the CBA]" are subject to binding arbitration. The Village abolished the positions of six firefighters, alleging that this action was required by economic distress. The Union and the firefighters filed a grievance asserting that the Village's action violated the CBA's no-layoff provision. The Village denied the grievance, and the Union and the firefighters commenced proceeding No. 1, seeking a preliminary injunction prohibiting the Village from laying off the firefighters. When the Union served a demand for arbitration on the Village and the Public Employment Relations Board, the Village commenced proceeding No. 2, seeking to permanently stay arbitration. Supreme Court found that the dispute was arbitrable and entered two orders that granted the preliminary injunction, denied the Village's application for a stay, and ordered the parties to proceed to arbitration. The Village appeals from both orders.[1]

The Village contends that the Union's grievance should not be submitted to arbitration because restrictions on the Village's right to abolish positions would violate public policy and interfere with the statutory mandate of Civil Service Law § 80. In deciding whether a grievance is arbitrable, "[w]e first ask whether there is any statutory, constitutional or public policy prohibition against arbitration of the grievance" (*Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d

---

1. The parties did not address the issue of the preliminary injunction upon appeal, treating it as moot because the Village abolished the positions after the Union failed to provide a court-ordered undertaking.

273, 278 [2002]). If no such prohibition is found, "we then examine the CBA to determine if the parties have agreed to arbitrate the dispute at issue" (*id.*).

Applying the first prong of this test, we find that the CBA's no-layoff clause is not subject to any prohibition against arbitration. A public employer does not violate public policy by voluntarily including a reasonable job security provision in a CBA (*see Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers*, 40 NY2d 268, 274-276 [1976]; *Matter of Burke v Bowen*, 40 NY2d 264, 267 [1976]).[2] The clause at issue here was not shown to be unreasonable, as the CBA's three-year duration was relatively brief (*see Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers*, 40 NY2d at 275),[3] and the agreement was not negotiated by parties of unequal bargaining power during a financial emergency (*see id.*; *Matter of Burke v Bowen*, 40 NY2d at 267). Further, public policy limitations on arbitrability are rare and "almost invariably" involve a nondelegable constitutional or statutory duty (*Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660, 668 [1990]; *accord Matter of City of Schenectady [City Fire Fighters Union, Local 28, I.A.F.F., AFL-CIO]*, 85 AD2d 116, 118 [1982]). Civil Service Law § 80 sets forth no such nondelegable duty pertinent to the provision at issue. Among other things, Civil Service Law § 80 establishes the manner in which suspensions and demotions must be implemented upon the abolition of positions (*see Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513, 520 [2007]). In *Chautauqua*, the Court of Appeals found that the statute imposed a nondelegable duty upon municipalities to determine which job titles were essential in delivering public services and then to protect employees in such titles according to their seniority (*id.* at 521). Thus, a CBA provision that set out a conflicting manner of implementing suspensions "represent[ed] an impermissible intrusion on [the] statutory scheme" (*id.* at 520), and a grievance arising from such a provision was not arbitrable. In contrast, Civil Service Law § 80 neither creates a public employer's power to abolish positions nor requires it to exercise such a power. Thus, we find no conflict between

---

**2.** Contrary to the Village's claim, we do not find the no-layoff clause too ambiguous to be considered a job security provision (*contrast Yonkers School Crossing Guard Union of Westchester Ch., CSEA v City of Yonkers*, 39 NY2d 964, 965 [1976]).

**3.** As written, the duration of the CBA was five years, but only three years remained at the time it was signed.

the no-layoff clause under examination and any " 'plain and clear prohibition[ ] in statute or controlling decision[al] law, or restrictive public policy' " that would bar arbitration of the grievance (*id.* at 518-519, quoting *Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers*, 40 NY2d at 273; *see Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d at 278).

Under the second prong of the test, the grievance is arbitrable if the parties have agreed to do so (*see Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d at 278). "Where a CBA contains a broad arbitration clause, our analysis in resolving whether the parties have so agreed is limited to 'determin[ing] whether there is a reasonable relationship between the subject matter of the dispute and the general subject matter of the CBA' " (*Matter of City of Elmira [Elmira Professional Firefighters' Assn., AFL-CIO, I.A.F.F.-Local 709]*, 34 AD3d 1075, 1076 [2006], quoting *Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d at 279; *see Matter of City of Binghamton [Binghamton Firefighters, Local 729, AFL-CIO]*, 20 AD3d 859, 860 [2005]). Under the CBA's broad grievance and arbitration provision, disputes "involving the interpretation or application of any provisions of [the CBA]" are subject to arbitration. Resolution of the current dispute depends on the interpretation of the CBA's no-layoff clause to determine whether that provision is applicable to the Village's action in abolishing six firefighters' positions. As this dispute is reasonably related to the CBA, we find that the parties agreed to arbitrate it (*see Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132, 143 [1999]). Therefore, Supreme Court properly determined that the parties' substantive disagreement as to the meaning and application of the no-layoff clause is to be resolved by arbitration, and we do not reach the parties' arguments on that subject.

Mercure, J.P., Lahtinen, Malone Jr. and McCarthy, JJ., concur. Ordered that the orders are affirmed, without costs.