[958 NE2d 899, 934 NYS2d 770]

In the Matter of the Arbitration between JOHNSON CITY PROFESSIONAL FIREFIGHTERS LOCAL 921 et al., Respondents, and VILLAGE OF JOHNSON CITY, Appellant. (Proceeding No. 1.)

In the Matter of the Arbitration between VILLAGE OF JOHNSON CITY, Appellant, and JOHNSON CITY FIREFIGHTERS ASSOCIATION, LOCAL 921 IAFF, Respondent. (Proceeding No. 2.)

Argued October 12, 2011; decided November 17, 2011

## POINTS OF COUNSEL

*Coughlin & Gerhart, L.L.P.,* Binghamton (*Paul J. Sweeney, Anna Dmitriev* and *Katelyn R. Dumont* of counsel), for appellant. I. The Third Department erred by creating a novel and incorrect legal standard when it held that a job security clause was "not too ambiguous" to be enforced, thereby ignoring the stricter legal standard previously articulated by this Court. (*Yonkers School Crossing Guard Union of Westchester Ch., CSEA v City of Yonkers,* 39 NY2d 964; *Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers,* 40 NY2d 268; *Matter of Burke v Bowen,* 40 NY2d 264; *Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.],* 37 NY2d 614; *Wolkstein v Beth Israel Med. Ctr.,* 103 Misc 2d 1095; *Fishgold v Sullivan Drydock & Repair Corp.,* 328 US 275; *CBS Inc. v International Photographers of the Motion Picture Indus., Local 644,* 603 F2d 1061; *Greenfield v Philles Records,* 98 NY2d 562; *Pozament Corp. v AES Westover, LLC,* 27 AD3d 1000; *Graev v Graev,* 11 NY3d 262.) II. The Third Department's "not too ambiguous" standard created an irreconcilable fissure within the judicial departments. (*Board of Educ. of Cent. School Dist. No. 1 of Towns of Niagara, Wheatfield, Lewiston & Cambria v Niagara Wheatfield Teachers Assn.,* 54 AD2d 281; *Board of Educ. of Newfane Cent. School Dist. No. 1 of Towns of Newfane, Lockport, Cambria & Wilson v Newfane Teachers Assn.,* 54 AD2d 1119; *Osoba v City of Beacon,* 57 AD2d 588; *Matter of Board of Coop. Educ. Servs. of Nassau County v Central Council of Teachers,* 59 AD2d 942; *Matter of Meaney v City of New Rochelle,* 58 AD2d 605; *Matter of Westchester Ch. Civ. Serv. Empls. Assn., Local 860 v Village*

*of Pelham,* 71 AD2d 1027.) III. The Third Department violated public policy when it compelled the arbitration of a job security clause which did not contain an "explicit, unambiguous and comprehensive" waiver of the municipality's right to eliminate positions. (*Sheedy v Pataki,* 236 AD2d 92; *Nauta v City of Poughkeepsie,* 610 F Supp 980; *Matter of Kent v Town of Niskayuna,* 244 AD2d 829; *Matter of Piekielniak v Axelrod,* 92 AD2d 968; *Abbott v City of Poughkeepsie,* 98 Misc 2d 601; *Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers,* 40 NY2d 268; *Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807,* 8 NY3d 513.)

*Hinman, Howard & Kattell, LLP,* Binghamton (*Paul T. Sheppard* of counsel), for respondents. I. The issue in dispute is subject to arbitration. (*Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers,* 40 NY2d 268; *Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807,* 8 NY3d 513; *Matter of Burke v Bowen,* 40 NY2d 264; *North Syracuse Cent. School Dist. v North Syracuse Educ. Assn.,* 45 NY2d 195; *Piro v Bowen,* 76 AD2d 392; *Matter of City of Utica [Zumpano],* 91 NY2d 964; *Matter of Board of Educ., W. Babylon Union Free School Dist. v West Babylon Teachers Assn.,* 72 AD2d 766, 52 NY2d 1002; *Yonkers School Crossing Guard Union of Westchester Ch., CSEA v City of Yonkers,* 39 NY2d 964; *Matter of Madison-Oneida Bd. of Coop. Educ. Servs. v Mills,* 4 NY3d 51; *Fishgold v Sullivan Drydock & Repair Corp.,* 328 US 275.) II. The parties agreed to arbitrate the dispute. (*Matter of City of Yonkers [Cassidy],* 58 AD2d 627, 44 NY2d 784; *New York Inst. of Technology v Council of Metropolitan & Old Westbury Chs., Am. Assn. of Univ. Professors,* 47 AD2d 659; *Sisters of St. John the Baptist, Providence Rest Convent v Geraghty Constructor,* 67 NY2d 997; *Matter of Amalgamated Tr. Union, Local Div. 1321 [Capital Dist. Tr. Sys., No. One, Capital Dist. Transp. Dist.],* 300 AD2d 809; *Matter of County of Albany [AFSCME, Council 82],* 114 AD2d 732; *Matter of Capital Dist. Transp. Auth. [Planz],* 68 AD3d 1499; *Matter of City of Ithaca [Ithaca Paid Fire Fighters Assn., IAFF, Local 737],* 29 AD3d 1129; *Matter of City of Binghamton v Binghamton Civ. Serv. Forum,* 79 AD2d 729; *Matter of County of Sullivan [Sullivan County Empls. Assn.],* 235 AD2d 748.)

*Nancy E. Hoffman,* Albany, and *Kara L. Hilburger* for Civil Service Employees Association, Inc., Local 1000, AFSCME,

AFL-CIO, amicus curiae. The lower court properly held that the "no-layoff" provision in the collective bargaining agreement is a valid job security provision and is thus arbitrable under the broad arbitration clause under the collective bargaining agreement. (*Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers*, 40 NY2d 268; *Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.]*, 90 NY2d 364; *Matter of City of Long Beach v Civil Serv. Empls. Assn., Inc.—Long Beach Unit*, 8 NY3d 465; *Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d 273; *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.*, 45 NY2d 411; *Matter of Burke v Bowen*, 40 NY2d 264; *Yonkers School Crossing Guard Union of Westchester Ch., CSEA v City of Yonkers*, 39 NY2d 964; *Matter of Houghton v Schuler*, 61 AD2d 1104; *County of Broome v Deputy Sheriffs Benevolent Assn. of Broome County*, 57 AD2d 496; *Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.]*, 37 NY2d 614.)

*Hinman Straub P.C.*, Albany (*John R. Saccocio* and *John F. Black* of counsel), for New York State Professional Fire Fighters Association, I.A.F.F., AFL-CIO, amicus curiae. The Appellate Division's reasoning in this case is consistent with this Court's decision in *Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807* (8 NY3d 513 [2007]) and respects the strong public policy of New York State, which favors collective bargaining and arbitration. (*Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd.*, 95 NY2d 73; *Matter of City of Schenectady v New York State Pub. Empl. Relations Bd.*, 85 NY2d 480; *Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660; *Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.]*, 90 NY2d 364; *Matter of New York City Dept. of Sanitation v MacDonald*, 87 NY2d 650; *Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y.*, 1 NY3d 72; *Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1.)

## OPINION OF THE COURT

PIGOTT, J.

The issue on appeal is whether the parties are required to arbitrate the meaning of a "no-layoff" clause in their collective

bargaining agreement. Given the particular contract in this case, we conclude that they are not.

## I.

On May 22, 2008, the Village of Johnson City and Johnson City Professional Fire Fighters, Local 921 IAFF executed a collective bargaining agreement (CBA) for a term running from June 1, 2006 through May 31, 2011. The CBA contains a no-layoff clause that states, in full: "A. The Village shall not lay-off any member of the bargaining unit during the term of this contract. B. The Village shall not be required to 'back fill' hire additional members to meet staffing level of expired agreement." The parties agreed that disputes concerning the interpretation of this clause, and any other provision of the CBA, should be resolved pursuant to a series of steps, culminating in arbitration before the Public Employment Relations Board if the parties were to reach a stalemate.

On May 12, 2009, the Village voted to abolish various positions within the government, including six firefighter positions, citing budgetary necessity. Pointing to the no-layoff clause, the Union filed a grievance with the Village, which was denied. The Union then served the Village with a notice of its intent to arbitrate. Both parties then sought relief in Supreme Court, the Union pursuant to a CPLR article 75 proceeding to enjoin the Village from terminating the six firefighters pending a determination through arbitration. Simultaneously, the Village brought a proceeding to stay any arbitration.

Supreme Court denied the Village's application, and granted the Union's cross application to compel arbitration. The Appellate Division affirmed in both cases, holding that the no-layoff clause was not subject to any prohibition against arbitration and that, given the CBA's broad grievance and arbitration provision, the issue was arbitrable (72 AD3d 1235, 1237-1238 [3d Dept 2010]). We granted the Village leave to appeal (15 NY3d 710 [2010]) and now reverse.

## II.

The Village contends that the termination of the six firefighters does not fall within the no-layoff clause and therefore is not arbitrable under the contract. We agree. Not all job security clauses are valid and enforceable, nor are they "valid and enforceable under all circumstances" (*Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers*, 40 NY2d

268, 275 [1976]). This Court has long held that a purported job security provision does not violate public policy, and therefore is valid and enforceable, only if the provision is "explicit," the CBA extends for a "reasonable period of time," and the CBA "was not negotiated in a period of a legislatively declared financial emergency between parties of unequal bargaining power" (*Matter of Burke v Bowen*, 40 NY2d 264, 266, 267 [1976] [upholding as valid and enforceable a "job security" clause that provided for a minimum number of firefighters for the CBA's term and "that in no event shall the presently agreed upon minimum be readjusted downward"]). A purported "job security" clause that is not explicit in its terms is violative of public policy, rendering it invalid and unenforceable.

In *Yonkers Fedn. of Teachers*, this Court found arbitrable a "job security" clause that stated that "[d]uring the life of this contract no person in this bargaining unit shall be terminated due to budgetary reasons or abolition of programs but only for unsatisfactory job performance and provided for under the Tenure Law," holding that the "[m]ost important" thing about the clause's language was that it was "*explicit* in its protection of the [workers] from abolition of their positions *due to budgetary stringencies*" (40 NY2d at 272, 275-276 [emphasis supplied]).

In contrast, in *Yonkers School Crossing Guard Union of Westchester Ch., CSEA v City of Yonkers* (39 NY2d 964, 965 [1976] [*Crossing Guard Union*]), we concluded that the CBA language "Present members may be removed for cause but will not be removed as a result of Post elimination" did not constitute a "job security" clause in the manner of the clauses we examined in *Burke* and *Yonkers Fedn. of Teachers*, holding that the clauses in the latter two cases "were explicit, unambiguous and comprehensive," while the one in *Crossing Guard Union* was ambiguous.

Contrary to the Union's contention, the no-layoff clause in this CBA is not arbitrable because it is not explicit, unambiguous and comprehensive. From a public policy standpoint, our requirement that "job security" clauses meet this stringent test derives from the notion that before a municipality bargains away its right to eliminate positions or terminate or lay off workers for budgetary, economic or other reasons, the parties must explicitly agree that the municipality is doing so and the scope of the provision must evidence that intent. Absent compliance with these requirements, a municipality's budgetary decisions will be routinely challenged by employees, and its ability

to abolish positions or terminate workers will be subject to the whim of arbitrators.

The pertinent portion of the no-layoff clause here states that the "Village shall not lay-off any member of the bargaining unit during the term of this contract" but this language, in and of itself, does not explicitly prohibit the Village from abolishing firefighter positions out of budgetary necessity (*cf. Yonkers Fedn. of Teachers*, 40 NY2d at 275-276). Unlike the clause in *Yonkers Fedn. of Teachers*, the clause here does not explicitly protect the firefighters from the abolition of their positions due to economic and budgetary stringencies. That is not to say that the parties could not have bargained for such a broad clause, only that it is unclear on its face whether they did so at all, which means that the clause is hardly unambiguous (*see Crossing Guard Union*, 39 NY2d at 965).

The term "layoff" is undefined in the CBA, and is open to different and reasonable interpretations. Indeed, the parties' disagreement over whether the term "layoff" constitutes a permanent or nonpermanent job loss, and whether the Village's abolition of the firefighter positions constituted a layoff, underscores its ambiguity. Moreover, the clause does not comprehensively prohibit the Village from abolishing firefighter positions, and, given its narrow and limited language, it cannot be construed as such. Had the Union desired that its members be protected from the elimination of firefighter positions, it could have bargained for such protections.

Simply put, because the clause is not explicit, unambiguous and comprehensive, there is nothing for the Union to grieve or for an arbitrator to decide. Having concluded that this dispute is not arbitrable for reasons of public policy, we need not reach the issue of whether the parties agreed to arbitrate.

Accordingly, the order of the Appellate Division should be reversed, with costs, the Village's application to stay the arbitration should be granted, and the Union's application to compel arbitration should be denied.

CIPARICK, J. (dissenting). Because I believe public policy does not prohibit the arbitration of the "no-layoff" clause in the collective bargaining agreement (CBA) governing the relationship of the parties in this case, and because the majority opinion departs from this Court's commitment to the furtherance of arbitration as a preferred means of resolving public sector labor disputes, I respectfully dissent.

Under the Taylor Law, public sector parties are empowered to arbitrate labor relations disputes arising from a CBA (*see* Civil Service Law § 204; *see also Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132, 137 [1999] [*Watertown*]). The law embodies the Legislature's explicit policy of encouraging arbitration "as a means of promoting harmonious relations between governmental employers and their employees, and preventing labor strife endangering uninterrupted governmental operations" (*Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1, 7 [2002] [*Transport Workers*]). Still, not all disputes are arbitrable (*see Watertown*, 93 NY2d at 137-139). Under a two-prong test, courts must:

> "first ask whether there is any statutory, constitutional or public policy prohibition against arbitration of the grievance. This is the 'may-they-arbitrate' prong. If there is no prohibition against arbitrating, we then examine the CBA to determine if the parties have agreed to arbitrate the dispute at issue. This is the 'did-they-agree-to arbitrate prong' " (*Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d 273, 278 [2002] [citations omitted]).

"[J]udicial intervention on public policy grounds," however, "constitutes a narrow exception to the otherwise broad power of parties to agree to arbitrate" (*Transport Workers*, 99 NY2d at 6-7) and restraint is especially appropriate in the context of public employment (*see id.* at 7).

In *Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers* (40 NY2d 268 [1976]), we held that "[a] provision in a [CBA] guaranteeing public employees job security for a reasonable period of time is not prohibited by any statute or controlling decisional law and is not contrary to public policy" (*id.* at 271). We stated that "[a] job security provision insures that, at least for the duration of the agreement, the employee need not fear being put out of a job" (*id.* at 275). We recognized that, indeed, the "absence of [such] fear may be critical to the maintenance and efficiency of public employment, just as the fear of inability to meet its debts may destroy the credit of the municipality" (*id.*). In deciding *Yonkers Fedn. of Teachers* and two related opinions issued with it, *Matter of Burke v Bowen* (40 NY2d 264 [1976]) and *Yonkers School Crossing Guard Union of Westchester Ch., CSEA v City of Yonkers* (39

NY2d 964 [1976] [*Crossing Guard Union*]), we established the principle that an arbitrable job security clause is one that is explicit, unambiguous and comprehensive.

Here, the no-layoff clause in the parties' CBA states in explicit terms that the "Village shall not lay-off any member of the bargaining unit during the term of this contract." Though the majority finds otherwise (*see* majority op at 38), a plain reading of that provision indicates that the Union negotiated to ensure that its constituents need not fear being put out of their firefighting jobs during the life of the CBA. At a time when the term "layoff" pervades the public dialogue, typically signifying the kind of large scale public and private workforce reductions that have characterized recent economic crises, it is reasonable to conclude that the parties employed that term to succinctly but thoroughly address the threat of job insecurity. Regardless, then, of whether "layoff," pertained to a temporary period of unemployment or a permanent job cut—an issue of interpretation, which should be decided by an arbitrator—the no-layoff clause at issue here should be deemed an explicit, unambiguous and comprehensive job security provision.

Furthermore, the provision extended for a reasonable time— approximately three years—and "was not negotiated in a period of a legislatively declared financial emergency between parties of unequal bargaining power" (*Matter of Burke*, 40 NY2d at 267). Despite the majority's suggestion to the contrary (*see* majority op at 38), a job security clause need not specifically reference protection against reductions due to fiscal strain to be enforceable (*see Matter of Burke*, 40 NY2d at 267). Thus, permitting the parties in this case to submit their dispute to arbitration would not violate public policy.

Even assuming, arguendo, that the provision at issue is not explicit, unambiguous and comprehensive, as we required over 30 years ago in *Crossing Guard Union* (*see* 39 NY2d at 965), this Court's commitment, through a "policy of noninterference," to "further[ing] . . . the laudable purposes served by permitting consenting parties to submit controversies to arbitration" (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 629 [1979]) may warrant a more flexible approach. We have previously recognized that public policy determinations do not lend themselves to the kind of bright-line rule to which the majority adheres. As we said in *Matter of Sprinzen*:

"[c]ontroversies involving questions of public policy

can rarely, if ever, be resolved by the blind application of sedentary legal principles. The very nature of the concept of public policy itself militates against any attempt to define its ingredients in a manner which would allow one to become complacent in the thought that those precepts which society so steadfastly embraces today will continue to serve as the foundation upon which society will function tomorrow. Public policy, like society, is continually evolving and those entrusted with its implementation must respond to its everchanging demands" (*id.* at 628).

Those demands require us now to assess the reasonableness of a bargained-for job security provision not in a vacuum but with an eye toward the social and economic realities in which the parties who are subject to the CBA live and operate. To be sure, municipalities, just like individuals, are straining under budgetary shortfalls to do more with less. But "[a] job security clause is useless if the public employer is free to disregard it when it is first needed" (*Yonkers Fedn. of Teachers*, 40 NY2d at 275). That a seemingly straightforward provision like the one at issue here can be so rendered threatens to undermine confidence in the collective bargaining process. This result, I believe, is contrary to the spirit and purpose of the Taylor Law (*see* Civil Service Law § 200) and, therefore, violates public policy.

Having determined that there is no prohibition against arbitration of the no-layoff clause, I turn to the second question of whether the parties agreed to arbitrate the instant dispute. The plain language of the CBA provides that either party may take a dispute "involving the interpretation or application of any provisions of [the CBA]" to arbitration before the Public Employment Relations Board. As the Union's grievance involves the interpretation and application of the no-layoff clause in the CBA, the Appellate Division correctly concluded that the parties reserved such matters for an arbitrator (*see* 72 AD3d 1235, 1238 [2010]). Thus, I would affirm the order of the Appellate Division.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Judge CIPARICK dissents and votes to affirm in a separate opinion in which Chief Judge LIPPMAN and Judge JONES concur.

Order reversed, etc.