Matter of City of Plattsburgh (Plattsburgh Permanent Firemen's Assn.) (2019 NY Slip Op 05367)





Matter of City of Plattsburgh (Plattsburgh Permanent Firemen's Assn.)


2019 NY Slip Op 05367


Decided on July 3, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 3, 2019

527791

[*1]In the Matter of the Arbitration between CITY OF PLATTSBURGH, Appellant, and PLATTSBURGH PERMANENT FIREMEN'S ASSOCIATION, Respondent.

Calendar Date: March 19, 2019

Before: Lynch, J.P., Clark, Mulvey, Aarons and Rumsey, JJ.


Coughlin & Gerhart, LLP, Binghamton (Robert H. McKertich of counsel), for appellant.
Satter Law Firm, Syracuse (Sarah E. Ruhlen of counsel), for respondent.



MEMORANDUM AND ORDER
Rumsey, J.
Appeal from an order of the Supreme Court (Powers, J.), entered June 7, 2018 in Clinton County, which, among other things, denied petitioner's application pursuant to CPLR 7503 to permanently stay arbitration between the parties.
Petitioner and respondent, the local firefighters' union, entered into a collective bargaining agreement (hereinafter CBA) for a term running from January 1, 2004 to December 31, 2007 [FN1]. The CBA included provisions that, among other things, prohibited layoffs, required minimum staffing levels of 36 firefighters and obligated petitioner to fill vacancies to maintain the agreed-upon minimum staffing levels. The CBA also provided for resolution of disputes concerning the interpretation, application or claimed violation of any provision of the CBA pursuant to a series of steps, culminating in arbitration before the Public Employment Relations Board if the parties were to reach a stalemate.
In June 2017, a firefighter retired, reducing the total number of firefighters employed by petitioner to 35. Petitioner refused to fill the vacant position, citing significant financial and budgetary constraints. After the grievances it filed with petitioner were denied, respondent served a demand for arbitration. Petitioner commenced this proceeding pursuant to CPLR article 75 to permanently stay arbitration and respondent answered and sought to compel arbitration. [*2]Supreme Court denied petitioner's application, but granted respondent's motion to compel [FN2]. Petitioner appeals.
Petitioner contends that the provision of the CBA that requires it to employ at least 36 firefighters is a job security clause that violates public policy because it is not sufficiently explicit and, therefore, it may not be enforced through arbitration. Respondent counters that the clause is not a job security clause but, rather, a safety provision that may be enforced through arbitration. "The threshold determination of whether a dispute is arbitrable is well settled. Proceeding with a two-part test, we first ask whether the parties may arbitrate the dispute by inquiring if there is any statutory, constitutional or public policy prohibition against arbitration of the grievance" (Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807, 8 NY3d 513, 519 [2007] [internal quotation marks and citations omitted]). Arbitration must be stayed where the granting of any relief would violate public policy (see id.).
In that regard, "a purported 'job security clause' that is not explicit in its terms is violative of public policy, rendering it invalid and unenforceable" (Matter of Johnson City Professional Firefighters Local 921 [Village of Johnson City], 18 NY3d 32, 37 [2011]). The Court of Appeals has explained that the "requirement that 'job security' clauses meet this stringent test derives from the notion that before a municipality bargains away its right to eliminate positions or terminate or lay off workers for budgetary, economic or other reasons, the parties must explicitly agree that the municipality is doing so and the scope of the provision must evidence that intent. Absent compliance with these requirements, a municipality's budgetary decisions will be routinely challenged by employees, and its ability to abolish positions or terminate workers will be subject to the whim of arbitrators" (id. at 37-38). In light of the potentially drastic effects that a waiver of the right to adjust future staffing levels entails, a clause that addresses both job security and safety concerns is considered a job security clause that must meet this stringent test to be enforceable (see e.g. Matter of Burke v Bowen, 40 NY2d 264, 266-267 [1976]; cf. Matter of City of Watertown [Watertown Professional Firefighters Assn., Local 191], 169 AD3d 1396, 1397 [2019], lv denied 33 NY3d 904 [2019]; Matter of City of Lockport [Lockport Professional Firefighters Assn., Inc.], 141 AD3d 1085, 1087-1088 [2016]).
Article I, section 11 of the CBA governs scheduling and staffing levels. Subsection 1 requires a minimum staffing level of 36 firefighters, organized into four platoons of nine persons each. Notably, it further provides that "[n]o member of the bargaining unit will be laid off[, p]resent staffing levels above the minimum thirty-six (36) will only be reduced by attrition [and n]o member shall be laid off or fired unless it is the result of disciplinary action." Subsection 3 requires petitioner to fill vacancies "as soon as possible" when staffing levels fall below the agreed-upon minimum. Although these provisions may relate to safety concerns, they also specifically address the issue of job security by mandating a minimum total staffing level and prohibiting layoffs. Thus, we agree with petitioner that the disputed terms constitute a job security clause. However, our inquiry does not end there. We must also consider whether the disputed clause explicitly evinces an intent by petitioner to bargain away its right to reduce the number of firefighters it employs for budgetary, economic or other reasons.
The clause at issue most closely resembles the clause considered by the Court of Appeals in Matter of Burke v Bowen (40 NY2d 264 [1976], supra), in which the parties agreed that the best interests of public safety regarding fire protection required that a minimum of 34 firefighters be employed and, further, that, upon any reconsideration of that issue, "in no event [*3]shall the presently agreed upon minimum be readjusted downward" (id. at 266)[FN3]. The clause at issue requires petitioner to fill vacancies as soon as possible to maintain "agreed upon" staffing levels, which, at the effective date of the contract, was 36 firefighters. However, the operative clause does not contain the explicit term precluding downward readjustment of that agreed-upon minimum level that was present in Matter of Burke v Bowen (supra). Rather, the clause at issue authorizes petitioner to unilaterally eliminate equipment or close a station on 30 days' notice and requires that the parties bargain the impact of any such change. We conclude that this clause, considered in its entirety, does not meet the "stringent test" necessary to establish that petitioner "bargain[ed] away its right to eliminate positions or terminate or lay off workers for budgetary, economic or other reasons" (Matter of Johnson City Professional Firefighters Local 921 [Village of Johnson City], 18 NY3d at 37). Accordingly, the dispute is not arbitrable for reasons of public policy. As such, Supreme Court's order is reversed.
Mulvey and Aarons, JJ., concur.




Clark, J. (concurring).


We agree with the majority that, although it may have also served to address work place safety concerns, the provision at issue in this case is a job security clause. Indeed, by setting a minimum staffing level and prohibiting layoffs and employment terminations for reasons other than disciplinary action, the provision ensured that, so long as the collective bargaining agreement was in effect, the municipal firefighters "need not fear being put out of a job" (Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers, 40 NY2d 268, 275 [1976]; accord Matter of Johnson City Professional Firefighters Local 921 [Village of Johnson City], 18 NY3d 32, 39 [2011])[FN4]. We write separately, however, because we believe that the majority has unnecessarily created a bright line rule — not borne out by the relevant case law — by stating that "a clause that addresses both job security and safety concerns is considered a job security clause." By making such a broad pronouncement, the majority has fashioned a blanket rule in which any clause that addresses job security, even tangentially, must automatically be subjected to the Court of Appeals' "stringent" test — that is, to be enforceable, it must be explicit in its terms, extend for "a 'reasonable period of time'" and not be "'negotiated in a period of a legislatively declared financial emergency between parties of unequal bargaining power'" (Matter of Johnson City Professional Firefighters Local 921 [Village of Johnson City], 18 NY3d at 36-37, quoting Matter of Burke v Bowen, 40 NY2d 264, 266 [1976]). In our view, each clause should be evaluated independently to determine whether it is in fact a job security clause.
We agree with the majority in all other respects, including the determination that the job security clause violates public policy because it is not sufficiently explicit in its terms. Although not addressed by the majority, we note that the provision further violates public policy because, having been in effect since at least 2005, it has been extended for an unreasonable period of time (compare Matter of Burke v Bowen, 40 NY2d at 266-267; Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers, 40 NY2d at 275-276). Thus, for the foregoing reasons, we concur with the majority that the parties' dispute is not arbitrable.
Lynch, J.P., concurs.
ORDERED that the order is reversed, without costs, petitioner's application to permanently stay arbitration granted and respondent's motion to compel arbitration denied.



Footnotes

Footnote 1: The terms of the CBA continue in effect following the expiration of its term because the parties have not yet entered into a successor agreement (see Civil Service Law § 209-a [1] [e]).

Footnote 2: In a separate proceeding, Supreme Court granted respondent's motion to compel arbitration of a dispute arising from a memorandum of agreement, which also addresses petitioner's obligations to fill vacant firefighter positions. Petitioner has appealed from that order (Matter of City of Plattsburgh [Plattsburgh Permanent Firemen's Assn.], ___ AD3d ___ [appeal No. 527793, decided herewith]).

Footnote 3: On three other occasions the Court of Appeals considered whether a municipality had explicitly waived its right to discharge employees for budgetary reasons, concluding that a mere prohibition against layoffs was insufficient (see Matter of Johnson City Professional Firefighters Local 921 [Village of Johnson City], 18 NY3d at 38; Yonkers School Crossing Guard Union of Westchester Ch., CSEA v City of Yonkers, 39 NY2d 964, 965 [1976]) and finding sufficient language that specifically prohibited termination of an employee for budgetary reasons (see Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers, 40 NY2d 268, 272 [1976]).

Footnote 4: In addition, the minimum number of firefighters required to operate the equipment per shift is less than the minimum staffing level set forth in the collective bargaining agreement.