Matter of City of Troy (Troy Uniformed Firefighters Assn., Local 86 IAFF, AFL-CIO) (2022 NY Slip Op 02174)





Matter of City of Troy (Troy Uniformed Firefighters Assn., Local 86 IAFF, AFL-CIO)


2022 NY Slip Op 02174


Decided on March 31, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 31, 2022

532734
[*1]In the Matter of the Arbitration between City of Troy, Appellant, and Troy Uniformed Firefighters Association, Local 86 IAFF, AFL-CIO, Respondent.

Calendar Date:February 15, 2022

Before:Garry, P.J., Lynch, Clark, Reynolds Fitzgerald and Fisher, JJ.

Goldberg Segalla, LLP, Albany (Jonathan M. Bernstein of counsel), for appellant.
Blitman & King LLP, Syracuse (Nathaniel G. Lambright of counsel), for respondent.



Lynch, J.
Appeal from an order of the Supreme Court (Silverman, J.), entered December 16, 2020 in Rensselaer County, which denied petitioner's application pursuant to CPLR 7503 to permanently stay arbitration between the parties.
On March 7, 2020, then Governor Andrew M. Cuomo issued Executive Order No. 202 declaring "a [s]tate disaster emergency for the entire [s]tate of New York" in response to the COVID-19 pandemic. Nine days later, the Governor issued Executive Order No. 202.4 which, in pertinent part, directed local governments to "allow non-essential personnel[,] as determined by the local government, to be able to work from home or take leave without charging accruals, except for those personnel essential to the locality's response to the COVID-19 emergency." The directive required at least a 50% reduction in the nonessential workforce. The next day, petitioner issued a directive "to de-densify the workplace while maintaining the essential functions necessary to ensure the continued operation of [petitioner]." Petitioner's firefighters, most of whom are paramedics, were deemed essential workers and not sent home as nonessential civilian employees were.
On July 9, 2020, respondent, the union that represents certain of petitioner's firefighters, filed a policy grievance
under the collective bargaining agreement (hereinafter CBA) between the parties. Relying on two provisions of the CBA related to equal treatment of petitioner's employees and holiday time off, respondent requested "equal paid time off and/or monetary compensation, equal to the time off the civilian employees received" for the period between March 17, 2020 and approximately June 3, 2020. After the grievance was administratively denied, petitioner initiated this proceeding pursuant to CPLR article 75 to permanently stay arbitration, contending that arbitration of the dispute was against public policy and that the parties had not agreed to arbitrate the issues raised. Supreme Court denied the petition. Petitioner appeals.
In determining whether a grievance may be submitted to arbitration, the Court of Appeals has enunciated a "two-part test" (Matter of City of Johnstown [Johnstown Police Benevolent Assn., 99 NY2d 273, 278 [2002]). "We first ask whether there is any statutory, constitutional or public policy prohibition against arbitration of the grievance. This is the 'may-they-arbitrate' prong. If there is no prohibition against arbitrating, we then examine the CBA to determine if the parties have agreed to arbitrate the dispute at issue. This is the 'did-they-agree-to-arbitrate' prong" (id. [internal citations omitted]). As to the first prong, petitioner maintains that arbitration is precluded as a matter of public policy because petitioner was required to comply with the pandemic-related executive orders as a matter of state public policy. Respondent counters that neither executive order precluded arbitration and that Supreme Court correctly determined that an arbitrator [*2]could remedy the grievance in a manner that would not compromise public safety.
The public policy exception to arbitration is a narrow one, particularly with respect to public employment collective bargaining agreements (see Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 99 NY2d 1, 6-7 [2002]). The Court of Appeals has explained that "the scope of collective bargaining may be limited by plain and clear, rather than express, prohibitions in the statute or decisional law or[,] in some instances[,] by public policy . . . whether explicit or implicit in statute or decisional law, or in neither" (Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d 563, 573 [2006] [internal quotation marks and citations omitted]). Stated differently, the Court has "articulated the limited role of the public policy exception as applying only in 'cases in which public policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator. . . . [T]he courts must be able to examine an arbitration agreement or an award on its face without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement'" (Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 99 NY2d at 7 [emphasis omitted], quoting Matter of Sprinzen [Nomberg], 46 NY2d 623, 631 [1979]).
The executive orders derive from the Governor's authority under Executive Law §§ 28 and 29-a to both declare a "disaster emergency" and to temporarily suspend pertinent provisions of state and local law necessary to address the emergency. There is no dispute here that the COVID-19 pandemic qualified as a "disaster emergency," nor is there any challenge to the propriety of the Governor's decision to implement such orders. There is also no question that petitioner was obligated to comply with these public health measures. Respondent is correct in asserting that the executive orders do not expressly preclude arbitration of the staffing impact on local governments. These orders do, however, compel a statewide response to counter the transformative public health threat presented by the COVID-19 pandemic, which has caused a devastating loss of life throughout the nation and the world.
Notably, the executive orders were issued at the inception of the pandemic when great uncertainty and trepidation affected us all. As an urgent matter of public health, respondent's members were required to stay on duty to protect others. At the same time, nonessential civilian employees were sent home to implement a necessary policy of social/physical distancing. These extraordinary pandemic measures transcend the normal and even emergency type of events that one could reasonably anticipate would impact the workplace (see generally JN Contemporary Art LLC [*3]v Phillips Auctioneers LLC, 2022 WL 852293, *3, 2022 US App LEXIS 7652, *10 [2d Cir, Mar. 23, 2022, No. 21-32-CV]). During oral argument, both parties agreed that a breach of the CBA was necessary to establish an arbitrable claim. Under the circumstances presented, we cannot agree that petitioner breached the CBA by responsibly implementing the Governor's directives. To hold otherwise would create an untenable result — i.e., it would sanction a finding that petitioner breached the CBA based upon its required compliance with state public policy. Based on the very nature of the pandemic, requiring extreme public health measures as implemented through the executive orders, we conclude that arbitration of the resulting impact on respondent's members is precluded as a matter of public policy. Having so concluded, we need not address the second "did-they-agree-to-arbitrate" prong of the arbitration standard.
Garry, P.J., Clark, Reynolds Fitzgerald and Fisher, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, and petition granted.